

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF ARKANSAS

```
**************************************************
M. KATHLEEN MCKINNEY, Regional Director of      *
Region 15 of the National Labor Relations Board, *
for and on behalf of the NATIONAL LABOR          *
RELATIONS BOARD,                                 *
                        Petitioner               *
                                                 *
                                                 *      14 --cv--4037
        v.                                       *
                                                 *
                                                 *
SOUTHERN BAKERIES, LLC,                          *
                        Respondent               *
                                                 *
**************************************************
```

## PETITION FOR INJUNCTION PURSUANT TO SECTION 10(j)
## OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED

To the Honorable Judges of the United States District Court for the Western District of Arkansas:

COMES NOW, M. Kathleen McKinney, Regional Director of Region 15 of the National Labor Relations Board (the Board), and petitions this Court for and on behalf of the Board, pursuant to the National Labor Relations Act, as amended (the Act) (61 Stat. 149; 73 Stat. 544; 29 U.S.C. §160[j]), for appropriate temporary injunctive relief pending the final disposition of the matters pending before the Board, alleging, *inter alia,* that Southern Bakeries, LLC (Respondent), has engaged in and is engaging in acts and conduct in violation of Sections 8(a)(1), (3) and (5) of the Act (29 U.S.C. §§158[a][1], [3] and[5]).  In support thereof, Petitioner respectfully shows as follows:

1. Petitioner is the Regional Director of the Fifteenth Region of the Board, an agency of the

1

United States Government, and files this Petition for and on behalf of the Board, which has authorized the filing of this petition.

2. Jurisdiction of this Court is invoked pursuant to Section 10(j) of the Act which provides, *inter alia*, that the Board shall have power, upon issuance of a complaint charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary injunctive relief or restraining order pending final disposition of the matter by the Board.

3. At all material times, Respondent, a limited liability company with an office and place of business in Hope, Arkansas, has been engaged in this judicial district in the business of operating a commercial bakery.

4. On the dates set forth below, the Bakery, Confectionery, Tobacco and Grain Millers International Union, Local 111 (the Union), pursuant to the provisions of the Act, filed with the Board the charges set forth below alleging that Respondent has engaged in and is engaging in unfair labor practices within the meaning of Sections 8(a)(1), (3) and (5) of the Act:

(a)    The charge in Case 15-CA-101311 was filed with the Board against Respondent on March 27, 2013.  (**Exhibit A**).

(b)    An amended charge in Case 15-CA-101311 was filed with the Board against Respondent on July 31, 2013. (**Exhibit B**).

(c)    The charge in Case 15-CA-103186 was filed with the Board against Respondent on April 18, 2013.  (**Exhibit C**).

(d)    An amended charge in Case 15-CA-103186 was filed with the Board against Respondent on April 30, 2013.  (**Exhibit D**).

2

(e)     The charge in Case 15-CA-104063 was filed with the Board against Respondent on April 30, 2013.  (**Exhibit E**).

(f)     An amended charge in Case 15-CA-104063 was filed with the Board against Respondent on July 26, 2013.  (**Exhibit F**).

(g)     The charge in Case 15-CA-106033 was filed with the Board against Respondent on May 29, 2013.  (**Exhibit G**).

(h)     The charge in Case 15-CA-107597 was filed with the Board against Respondent on June 20, 2013.  (**Exhibit H**).

(i)     The charge in Case 15-CA-108613 was filed with the Board against Respondent on July 8, 2013.  (**Exhibit I**).

(j)     The charge in Case 15-CA-109746 was filed with the Board against Respondent on July 23, 2013.  (**Exhibit J**).

(k)     An amended charge in Case 15-CA-109746 was filed with the Board against Respondent on August 19, 2013.  (**Exhibit K**).

(l)     The charge in Case 15-CA-109753 was filed with the Board against Respondent on July 23, 2013.  (**Exhibit L**).

(m)     The charge in Case 15-CA-109755 was filed with the Board against Respondent on July 23, 2013.  (**Exhibit M**).

(n)     The charge in Case 26-CA-077268 was filed with the Board against Respondent on March 23, 2012.  (**Exhibit N**).

(o)     The charge in Case 26-CA-077536 was filed with the Board against Respondent on March 28, 2012.  (**Exhibit O**).

(p)     The charge in Case 15-CA-115945 was filed with the Board against Respondent on October 30, 2013. (**Exhibit P**).

(q)     An amended charge in Case 15-CA-115945 was filed with the Board against Respondent on January 14, 2014. (**Exhibit Q**).

5. The aforesaid charges were referred to Petitioner as Regional Director of Region 15 for investigation.

6. Following a field investigation during which all parties had an opportunity to submit evidence concerning the allegations raised in the charges outlined above, Petitioner determined that there is reasonable cause to believe, as alleged in the charges, that Respondent is engaging unfair labor practices in violation of Sections 8(a)(1), (3) and (5) of the Act.  Thereafter, on August 30, 2013, the Acting General Counsel of the Board, on behalf of the Board, by the Regional Director of Region 15, issued an Order Consolidating Cases, Consolidated Complaint and Notice of Hearing against Respondent pursuant to Section 10(b) of the Act (29 U.S.C. § 160[b]), alleging that Respondent has engaged in and is engaging in unfair labor practices within the meaning of Sections 8(a)(1), (3) and (5) of the Act.  On September 13, 2013, Respondent filed an Answer to the Consolidated Complaint.

7. Thereafter, on October 30, 2013, upon further investigation of the charges outlined above, the Acting General Counsel of the Board, on behalf of the Board, by the Regional Director of Region 15, issued an Amended Consolidated Complaint and Notice of Hearing against Respondent pursuant to Section 10(b) of the Act, alleging that Respondent has engaged in and is engaging in unfair labor practices within the meaning of Sections 8(a)(1), (3) and (5) of the Act.  On November 13, 2013, Respondent filed an Answer to the Amended Consolidated Complaint.

4

8.  Thereafter, on November 21, 2013, upon further investigation of the charges outlined above, the General Counsel of the Board, on behalf of the Board, by the Regional Director of Region 15, issued a Second Order Consolidating Cases, Second Consolidated Complaint and Notice of Hearing against Respondent pursuant to Section 10(b) of the Act, alleging that Respondent has engaged in and is engaging in unfair labor practices within the meaning of Sections 8(a)(1), (3) and (5) of the Act.  On December 5, 2013, Respondent filed an Answer to the Second Consolidated Complaint.

9.  Thereafter, on January 10, 2014, upon further investigation of the charges outlined above, the General Counsel of the Board, on behalf of the Board, by the Regional Director of Region 15, issued an Order Further Consolidating Cases, Consolidated Complaint and Notice of Hearing (Third Consolidated Complaint) against Respondent pursuant to Section 10(b) of the Act, alleging that Respondent has engaged in and is engaging in unfair labor practices within the meaning of Sections 8(a)(1), (3) and (5) of the Act.  (**Exhibit R**).  On January 24, 2014, Respondent filed an Answer to Third Consolidated Complaint.  (**Exhibit S**).

10.  On February 4-7, 2014, an evidentiary hearing was held before Administrative Law Judge (ALJ) Robert Ringler on the allegations in the Third Consolidated Complaint.  At the outset of the administrative hearing the ALJ granted a motion by Counsel for the General Counsel to amend the Third Consolidated Complaint.  At this time the matter is pending before Judge Ringler.  The ALJ's decision and order is appealable to the Board and has no force or effect absent further action by the Board.

11.  Petitioner is likely to succeed in establishing that the allegations of the Third Consolidated Complaint are true and that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act, and affecting

commerce within the meaning of Section 2(6) and (7) of the Act (29 U.S.C. §152[6] and [7]). More particularly, there is a strong likelihood of success in proving that Respondent has interfered with, restrained and coerced employees in the exercise of rights guaranteed by Section 7 of the Act (29 U.S.C. §157), unlawfully interrogated and threatened employees, created the impression that employees' union and other protected activity were under surveillance, unlawfully disciplined and discharged employees because of their union and other protected activities, made unilateral changes in employees' wages, hours or other terms and conditions of employment, refused to allow representatives of the Union access to Respondent's facility in a manner consistent with established past practice, unlawfully withdrew recognition of the Union as the as the exclusive bargaining representative of Respondent's production and sanitation employees and ceased remitting membership dues to the Union, in violation of Section 8(a)(1), (3) and (5) of the Act.  In support thereof, and of the request for injunctive relief herein, the complete administrative hearing record, transcripts and exhibits, is attached hereto as **Exhibit T**. In reliance upon this hearing record, Petitioner, upon information and belief, shows as follows:

(a)     At all material times, Respondent has been a limited liability company, with an office and place of business in Hope, Arkansas where it is engaged in the operation of a commercial bakery.

(b)     In conducting its business operations, Respondent annually sells and ships from its Hope, Arkansas facility, goods valued in excess of $50,000 directly to points outside the State of Arkansas.  Respondent annually purchases and receives at its Hope, Arkansas facility, goods valued in excess of $50,000 directly from points located outside the State of Arkansas.

(c)     At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act (29 U.S.C. §152[2], [6] and [7]).

(d)     At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act (29 U.S.C. §152[5]).

(e)     At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act (29 U.S.C. §152[11]) and agents of Respondent within the meaning of Section 2(13) of the Act (29 U.S.C. §152[13]):

| | | |
|---|---|---|
| Louis Banda | - | Supervisor |
| Dan Banks | - | Director of Manufacturing |
| James R. Brown | - | Director of QA and Governmental Compliance |
| Linda Burke | - | Human Resources Manager |
| Ray Golsten | - | Supervisor |
| Rickey Ledbetter | - | Executive Vice-President, General Manager |
| Kenny White | - | Supervisor |

(f)     About September 2012, a more exact date currently unknown to Counsel for the General Counsel, Respondent, by Supervisor White, at Respondent's facility:

      i.   Interrogated employees concerning their union activities.

      ii.   Threatened employees with discharge because of their union activity.

(g)     About November 12, 2012, Respondent, in the lunch room at Respondent's facility, by installing video cameras, created an impression among its employees that their union activities were under surveillance by Respondent.

(h)     About January 17, 2013, Respondent, by Rickey Ledbetter, at Respondent's facility:

      i.   Threatened its employees with plant closure because of the Union.

7

    ii.  Made statements reasonably intended to coerce the employee or interfere with Section 7 rights by posting a memo that statements made by the Union were "simply false."

(i)      About January 23, 2013, Respondent, by Rickey Ledbetter, during captive audience meetings at Respondent's facility:

    i.  Threatened its employees with job loss because of their union activity.

    ii.  Threatened its employees on 17 occasions with plant closure because of their union activity.

    iii.  Threatened employees by telling them on three separate occasions that they were paid less because they retained the Union as their representative.

    iv.  Threatened employees by telling them that their continued support for the Union was the reason they were not receiving raises.

    v.  Threatened employees by implying the Union could not do anything for employees, informed its employees (five times) that it would be futile for them to select the Union as their bargaining representative.

    vi.  Interrogated and engaged in surveillance of its employees' union activity by instructing employees to report it if other employees talked to them about the Union.

    vii.  Threatened its employees with unspecified reprisals to discourage their union activity.

    viii.  Orally promulgated and since then has maintained the following rule:

> "If you are harassed or threatened on any basis during this election campaign, … we want to know about it immediately, so we can

> address the problem, …. We will not tolerate the abuse of any
> employee rights in this work place. But to remedy the problems
> and prevent recurrence, you must bring it to our attention."

(j)     Respondent promulgated the rule described above in paragraph 11(i)(viii) to discourage its employees from assisting the Union or engaging in other concerted activities.

(k)     About late January or early February 2013, a more exact date currently unknown to Counsel for the General Counsel, Respondent, by Supervisor White, at Respondent's facility, interrogated employees concerning their union activities.

(l)     About late January or early February 2013, a more exact date currently unknown to Counsel for the General Counsel, Respondent, by Supervisor White, at Respondent's facility, threatened employees with plant closure because of their union activity.

(m)     About February 1, 2013, Respondent, by Rickey Ledbetter, during captive audience meetings at Respondent's facility:

> i.   Threatened its employees with job loss because of their union activity.
>
> ii.  Threatened its employees on 17 times with plant closure because of their union activity.
>
> iii. Threatened employees by telling them on three separate occasions that they were paid less because they retained the Union as their representative.
>
> iv.  Threatened employees by telling them that their continued support for the Union was the reason they were not receiving raises.
>
> v.   Threatened employees by implying the Union could not do anything for employees, informed its employees and that it would be futile for them to select the Union as their bargaining representative.

9

      vi.  Interrogated and engaged in surveillance of its employees' union activity by instructing employees to report if other employees talked to them about the Union.

     vii.  Threatened its employees with unspecified reprisals to discourage their union activity.

   viii.  Orally promulgated and since then has maintained the following rule:

> "If you are harassed or threatened on any basis during this election campaign, ... we want to know about it immediately, so we can address the problem, .... We will not tolerate the abuse of any employee rights in this work place. But to remedy the problems and prevent recurrence, you must bring it to our attention."

(n)     Respondent promulgated the rule described above in paragraph 11(m)(viii) to discourage its employees from assisting the Union or engaging in other concerted activities.

(o)     About January 2013, a more exact date currently unknown to the General Counsel, Respondent refused to grant time off to its employee Christopher Contreras.

(p)     About April 2013, a more exact date currently unknown to the General Counsel, Respondent refused to grant time off to its employee Christopher Contreras.

(q)     About April 15, 2013, Respondent discharged its employee Christopher Contreras.

(r)     Respondent engaged in the conduct described above in paragraphs 11(o) through 11(q) because the named employee of Respondent assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

(s)     The following employees of Respondent (the Unit) constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act (29 U.S.C. §159[b]):

Included:      All full-time and regular part-time production and sanitation
employees employed by Respondent at its Hope, Arkansas facility.

Excluded:      All other employees, including temporary and seasonal employees
as defined in the collective-bargaining agreement, office clerical employees
professional employees, guards, and supervisors as defined in the Act.

(t)     On September 15, 2009, the Board certified the Union as the exclusive collective-

bargaining representative of the Unit.

(u)     At all times since September 15, 2009, based on Section 9(a) of the Act (29

U.S.C. §159[a]), the Union has been the exclusive collective-bargaining representative of the

Unit.

(v)     About November 2012, a more specific date currently unknown to the General

Counsel, Respondent installed video cameras in employee lunch rooms.

(w)     About November 2012, a more specific date currently unknown to the General

Counsel, the Union requested that Respondent bargain collectively about video cameras in the

employee lunch rooms.

(x)     Since about November 2012, a more specific date currently unknown to the

General Counsel, Respondent has failed and refused to bargain collectively about the subject set

forth above in paragraphs 11(v) and 11(w).

(y)     About March 8, 2012, Respondent changed its past practice regarding Union

access to Respondent's facility.

(z)     About March 20, 2012, Respondent changed the location where the Union

historically met with bargaining-unit employees to discuss grievances, Union business and other

work-related matters.

(aa)    About March 23, 2012, Respondent changed its past practice of providing Union

representatives access to Respondent's facility.

11

(bb)    Since about January 7, 2013, Respondent:

    i.  Changed the space used by the Union for meeting with bargaining-unit employees.

    ii.  Blocked the windows between the small and large employee lunchrooms.

    iii.  Limited the reasons and occasions when the Union would be allowed access to Respondent's facility.

    iv.  Prohibited solicitation by the Union.

    v.  Stopped the Union's use of the large lunchroom to meet with employees.

    vi.  Informed the Union if it is observed engaging in activities outside of restrictions imposed by Respondent, the Union would not be allowed future access to Respondent's facility.

(cc)    Since about January 8, 2013, Respondent:

    i.  Imposed new conditions on the Union before granting the Union access to Respondent's facility.

    ii.  Imposed a notification requirement on the Union before granting the Union access to Respondent's facility.

    iii.  Prohibited the Union from promoting or talking with employees about the upcoming NLRB election if the Union wanted access to Respondent's facility.

(dd)   About January 10, 2013, Respondent:

    i.   Conditioned the Union's subsequent visits to Respondent's facility on the Union not promoting or talking with employees about the upcoming NLRB election.

    ii.   Imposed a notification requirement on the Union before granting the Union access to Respondent's facility.

(ee)   About January 16, 2013, Respondent:

    i.   Conditioned the Union's subsequent visits to Respondent's facility on the Union not promoting or talking with employees about the upcoming NLRB election.

    ii.   Imposed a notification requirement on the Union before granting the Union access to Respondent's facility.

    iii.   Threatened to no longer allow the Union access to Respondent's facility for plant visitations.

(ff)   About January 21, 2013, the Respondent:

    i.   Began to require the Union to state the reason and justification for its visits.

    ii.   Threatened to no longer allow union visitations to Respondent's facility.

    iii.   Threatened to arrest union officials for trespassing.

(gg)   About February 7, 2013, Respondent:

    i.   Conditioned the Union's subsequent visits to the Respondent's facility

on the Union not promoting or talking with employees about the
upcoming NLRB election.

ii. Imposed a notification requirement on the Union before granting the
Union access to Respondent's facility.

(hh)     Since about February 8, 2013, Respondent has denied the Union access to
Respondent's facility for plant visitations with bargaining-unit employees.

(ii)     About April 17, 2013, Respondent denied the Union access to Respondent's
facility for plant visitations with bargaining-unit employees.

(jj)     About July 3, 2013, Respondent ceased union dues-check off and stopped
remitting dues to the Union.

(kk)     About July 23, 2013, Respondent refused to allow the Union access to its facility.

(ll)     About September 14, 2013, Respondent gave a wage increase to bargaining-unit
employees.

(mm)     The subjects set forth above in paragraphs 11(v)-(ll) relate to wages, hours, and
other terms and conditions of employment of the Unit and are mandatory subjects for the
purposes of collective bargaining.

(nn)     Respondent engaged in the conduct described above in paragraph 11(v)-(ll)
without prior notice to the Union and without affording the Union an opportunity to bargain with
Respondent with respect to this conduct and the effects of this conduct.

(oo)     Since about July 3, 2013, Respondent withdrew its recognition of the Union as the
exclusive collective-bargaining representative of the Unit.

14

(pp)   By the conduct described above in paragraphs 11(f)-(n), Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

(qq)   By the conduct described above in paragraphs 11(o)-(r) and 11(ll), Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

(rr)   By the conduct described above in paragraphs 11(v) through 11(oo), Respondent has been failing and refusing to bargain collectively and in good faith with the exclusive collective-bargaining representative of its employees in violation of Section 8(a)(1) and (5) of the Act.

(ss)   The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

12.   The unfair labor practices of Respondent, described above in paragraph 11, have taken place within this judicial district.

13.   (a)   Petitioner is likely to succeed in proving that by the conduct set forth in paragraph 11(f)-(n), Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

(b)   Petitioner is likely to succeed in proving that by the conduct set forth in paragraphs 11(o)-(r) and 11(ll), Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act

15

(c)    Petitioner is likely to succeed in proving that by the conduct set forth in paragraphs 11(v) through 11(oo), Respondent has been failing and refusing to bargain collectively and in good faith with the exclusive collective-bargaining representative of its employees in violation of Section 8(a)(1) and (5) of the Act.

14.  Upon information and belief, it may fairly be anticipated that, unless enjoined, Respondent will continue the acts and conduct aforesaid described, or similar or related acts and conduct, in violation of Section 8(a)(1) and (3) of the Act, and will continue to fail and refuse to bargain collectively and in good faith with the representative of its employees in violation of Section 8(a)(1) and (5) of the Act, and will continue to interfere with, restrain and coerce employees in the exercise of the rights guaranteed them under Section 7 of the Act in violation of Section 8(a)(1) of the Act.

15.  Upon information and belief, absent the interim relief sought in this petition, Respondent's conduct will impede, and ultimately defeat, the most paramount provisions of the Act.   Section 7 of the Act protects the rights of employees to "join, form or assist" labor organizations, [and] to bargain collectively through representatives of their own choosing . . . ." 29 U.S.C. §157.  Respondent's conduct herein strikes at the very principles which form the foundation of the Act and causes irreparable harm to the interest of unit employees and the labor organizations they select to represent them.  Unless enjoined, Respondent will effectively have denied its employees their right pursuant to the Act to form, join, or assist Unions and to bargain collectively through the Union, thereby frustrating employees, now and in the future, in the exercise of the rights guaranteed them by Section 7 of the Act.

16.  Unless the aforesaid unfair labor practices are immediately restrained, there is imminent danger that substantial and irreparable injury will result to Respondent's employees and to the

Union's ability to represent them in collective bargaining. A serious flouting of the Act will continue with the result that enforcement of important provisions of the Act and of the public policy will be thwarted before Respondent can be placed under legal restraint through the regular procedures of a Board Order as enforced by a decree of a U.S. Court of Appeals. The Petitioner believes in good faith that there is a strong likelihood it will prevail on the administrative complaint and the remedy will require, *inter alia*, the Respondent to immediately re-establish recognition of the Union as the exclusive collective-bargaining representative of its employees, and to meet and bargain in good faith upon request by the Union. Unless restrained, Respondent's unlawful conduct will irreparably damage the integrity of the collective bargaining process and may ultimately result in an irreparable dissipation of employee support for the Union, by the substantial employee turnover over time and the denial of Union access to Respondent's facility during Board litigation, injuries which cannot be restored by a final Board order and/or subsequent Court judgment. Employees will continue to be deprived of their Section 7 rights to be represented effectively by the Union as their collective-bargaining representative, because Respondent has unlawfully withdrawn recognition of the Union as the exclusive collective-bargaining representative of the unit employees.

17. Respondent's unfair labor practices, as described above in paragraph 11, have and are continuing to substantially and irreparably harm employees of Respondent in the exercise of the rights guaranteed them by Section 7 of the Act. More particularly, upon information and belief, Respondent's unfair labor practices have caused and will continue to cause the following irreparable harm:

(a)     Respondent's unremedied unfair labor practices undermine employees' support for the Union as their collective-bargaining representative.

17

(b)     Without interim reinstatement of the terminated employee Christopher Contreras, employees will be justifiably reluctant to support the Union.

(c)     Without the restoration of the historical right of Union access to the facility, it may be fairly anticipated that employee support for and confidence in the Union will erode. Such erosion is inevitable over time and stems from the likely impression by employees of the ineffectiveness of the Union because Respondent has unilaterally withdrawn recognition. This loss of the bargaining unit's support cannot be restored by a final Board order.

(d)     As a result of Respondent's unremedied unfair labor practices, the Union has entirely lost its ability to bargain on behalf of employees who have freely chosen the Union to represent them and, without interim relief, employees are deprived of the benefits of any collective bargaining pending the Board's decision.  Interim relief is thus necessary to salvage some of the bargaining equality that existed prior to Respondent's unfair labor practices.

(e)     Without an interim bargaining order, a restoration of the Union's right of access, and the reinstatement of the terminated employee, the delay inherent in completing the adjudicatory process will result in the frustration of the Board's ability to remedy the unfair labor practices because Respondent's unfair labor practices will have already succeeded, creating an irreparable and undue bargaining advantage for Respondent upon the Board's final order.

18. In balancing the equities in this matter, the irreparable harm to the collective-bargaining process, to the entire bargaining Unit, to the public interest, and to the purposes and policies of the Act, if injunctive relief is not granted, clearly outweighs any harm that the granting of such injunctive relief will have on Respondent, particularly in light of the strong likelihood of Petitioner's success on the merits.

18

(a)     The primary remedies Petitioner seeks will require Respondent to take the following affirmative action: (1) recognize and bargain with the Union; (2) restore the historical rights of access to the Union; (3) restore the terms and conditions of the prior collective-bargaining agreement; and (4) reinstate employee Christopher Contreras.

(b)     Interim bargaining with the Union only requires Respondent to bargain in good faith; it does not compel Respondent to agree to any specific term or condition of employment advanced by the Union. Moreover, any agreement reached between the parties during such interim bargaining can contain a condition subsequent to take into account the unlikely possibility of the Board's ultimate refusal to grant a final bargaining order remedy. The cost of interim bargaining in terms of time and money, which is borne equally by both parties, is not so great as to defeat Petitioner's request for an interim bargaining order here.

19. Petitioner has a strong likelihood of succeeding on the merits of the allegations in the Complaint.  Respondent must be enjoined from continuing to engage in unlawful threatening and coercive behavior, making unilateral changes to employee terms and conditions of employment or other items which are mandatory subjects of bargaining, denying the Union access to its facility, and its unlawful withdrawal of recognition, all violations of the Act as alleged.

20. Injunctive relief is in the public interest here because, unless injunctive relief is immediately obtained, it can fairly be anticipated that employees will permanently and irreversibly lose the benefits of the Board's processes and the exercise of statutory rights for the entire period required for Board adjudication, a harm which cannot be remedied in due course by the Board.

21. Upon information and belief, to avoid the serious consequences set forth above, it is essential, just, proper, and necessary for the purposes of effectuating the polices of the Act and

avoiding substantial, irreparable, and immediate injury to such policies, to the public interest, and the employees involved here, and in accordance with the purposes of Section 10(j) of the Act, that, pending a disposition of the matters before the Board, Respondent be enjoined and restrained as herein prayed.

WHEREFORE PETITIONER PRAYS:

1. That the District Court issue an order directing Respondent to file an answer to the allegations of this Petition and show cause why, pending final adjudication by the Board of the matters pending before it in National Labor Relations Board Case Nos. 26-CA-077268, 26-CA-077536, 15-CA-101311, 15-CA-103186, 15-CA-104063, 15-CA-106033, 15-CA-107597, 15-CA-108613, 15-CA-109746, 15-CA-109753, 15-CA-109755, and 15-CA-115945 a temporary injunction should not issue:

    (a) Directing and ordering Respondent to immediately cease and desist from:

       (1) failing and refusing to recognize and bargain in good faith with the Bakery, Confectionary, Tobacco Workers and Grain Millers International Union, Local 111 as the exclusive bargaining representative of the unit employees at Southern Bakeries, LLC;

       (2) making unilateral changes in the employees' wages, hours or other terms and conditions of employment;

       (3) refusing to allow representatives of the Union access to Respondent's facility in a manner consistent with the historical past practice;

       (4) interrogating employees about their Union or other protected activity;

       (5) threatening employees with discharge, job loss, plant closure, futility, or other reprisals because of their Union or other protected activity;

       (6) making comments disparaging the Union;

       (7) conducting surveillance or creating the impression that the employees' Union or other protected activity is under surveillance;

(8) failing to check off dues and remit those dues to the Union;

(9) suspending, discharging, disciplining or otherwise disparately treating employees because of their union or other protected activity; and

(10)   in any like or related manner, interfering with, restraining or coercing employees in the exercise of their Section 7 rights [29 U.S.C. § 157].[1]

(b) Affirmatively directing and ordering Respondent to:

(1) recognize and, upon request, bargain in good faith with the Union as the exclusive collective-bargaining representative of the employees in the appropriate unit, concerning their terms or conditions of employment and, if an understanding is reached, embody the understanding in a signed collective-bargaining agreement;

(2) allow representatives of the Union access to Respondent's facility in a manner consistent with the historical past practice;

(3) remove the video cameras from the employee lunch rooms;

(4) check off dues and remit those dues to the Union;

(5) within five (5) days of the issuance of this Order, reinstate Christopher Contreras to his former position and conditions of employment, displacing, if necessary, any worker hired or reassigned to fill that position, and if that position no longer exists, reinstate him to a substantially equivalent position;

(6) post copies of the District Court's Order in English and Spanish, with the Spanish translation to be paid for by the Respondent and approved by the Regional Director of Region 15, at all locations where Respondent notices to unit employees are customarily posted; maintain these postings free from all obstructions and defacements pending the Board's final adjudication of the administrative case; and grant to agents of the Board reasonable access to the facility to monitor compliance with this posting provision;

(7) within ten (10) days of the date of this Order, hold a meeting or meetings at the Respondent's facility scheduled to ensure the widest possible audience, at which a responsible management official, in the presence of a Board Agent, will read the District Court's Order to employees in both English and Spanish, or at Respondent's option, have a Board Agent read the Order in that official's presence; Respondent shall notify the Union in advance of the time and date of such meeting(s) and an

---

[1] Section 7 of the Act guarantees employees the right to either engage or not engage in forming, joining, or assisting labor organizations. 29 U.S.C. §157. Section 7 also protects employees' participation in any activities for the purposes of collective bargaining, or other mutual aid or protection. *Id.*

official of the Union may be present at such meeting(s) to monitor the reading of the District Court's Order;[2]

(8) within twenty (20) days of the issuance of the District Court's Order, file with the Court, with a copy submitted to the Regional Director for Region 15 of the Board, a sworn affidavit from a responsible official setting forth with specificity the manner in which Respondent has complied with the terms of this decree, including the identification of those locations where the Court's order has been posted.


Dated at Memphis, Tennessee, this 27th day of February, 2014.


s/ Linda M. Mohns
COUNSEL FOR PETITIONER
National Labor Relations Board
Region 15, Subregion 26
80 Monroe Avenue, Suite 350
Memphis, TN  38103
Telephone: (901) 544-0027
Facsimile: (901) 544-0008
E-Mail: linda.mohns@nlrb.gov
New York Bar No. 2107944

---

[2] As support for a reading of the district court's order, see, e.g., *Norelli v. HTH Corp.*, 699 F. Supp. 2d 1176 (D. Haw. 2010), *aff'd*, 650 F.3d 1334 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1821 (2012); *Frankl v. Fairfield Imports, LLC*, 2014 WL 130937, *17 (E.D. Cal. January 14, 2014); *Ahearn v. Remington Lodging and Hospitality*, 842 F.Supp.2d 1186, 1207-08 (D. Alaska 2012); *Calatrello v. Gen. Die Casters*, 2011 WL 446685, at *8 (N.D. Ohio Jan. 11, 2011); *Sacramento Coca-Cola Bottling Co.*, 733 F.Supp. 1201, 1218 (E.D. Cal. 2010).

STATE OF LOUISIANA     )
                         )
PARISH OF ORLEANS     )

       I, <u>M. Kathleen McKinney</u>, being duly sworn, depose and say:

       I am the Regional Director for the New Orleans Regional Office, Region Fifteen of the National Labor Relations Board (Board). I have read the Petition for Interim Injunctive Relief Pursuant To Section 10(j) of the National Labor Relations Act [29 U.S.C. § 160(j)] (Petition), and know the contents thereof and the statements therein made upon personal knowledge are true and those made upon information and belief, I believe to be true.

                                           _____

                                           M. Kathleen McKinney, Regional Director
                                         National Labor Relations Board – Region 15
                                         600 South Maestri Place, 7th Floor
                                         New Orleans, LA 70130-3408

Subscribed and sworn to before me
this 20 th day of February, 2014

_____
NOTARY PUBLIC

My commission expires: For life



ALEXANDRA KAY ROATH
Notary Public
ID No. 133525 - Bar No. 34729
Saint Bernard Parish, Louisiana
My Commission is issued for Life.