UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 15

| | | |
|---|---|---|
| SOUTHERN BAKERIES, LLC | * | Cases 26-CA-077268 |
| | * | 26-CA-077536 |
| | * | 15-CA-101311 |
| and | * | 15-CA-103186 |
| | * | 15-CA-104063 |
| BAKERY, CONFECTIONERY, TOBACCO | * | 15-CA-106033 |
| GRAIN MILLERS UNION, | * | 15-CA-107597 |
| LOCAL 111 | * | 15-CA-108613 |
| | * | 15-CA-109746 |
| | | 15-CA-109753 |
| | | 15-CA-109755 |
| | | 15-CA-115945 |

## ORDER FURTHER CONSOLIDATING CASES, CONSOLIDATED COMPLAINT AND NOTICE OF HEARING

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations Board (the Board), and to avoid unnecessary costs or delay, IT IS ORDERED THAT the Second Consolidated Complaint and Second Notice of Hearing issued on November 21, 2013, based upon charges filed by the Bakery, Confectionary, Tobacco Workers and Grain Millers International Union, Local 111 (Union), in Cases 26-CA-077268, 26-CA-077536, 15-CA-101311, 15-CA-103186, 15-CA-104063, 15-CA-106033, 15-CA-107597, 15-CA-108613, 15-CA-109746, 15-CA-109753, and 15-CA-109755 alleging that Southern Bakeries, LLC, (Respondent), had violated the National Labor Relations Act, 29 U.S.C. § 151 et seq. (the Act), by engaging in unfair labor practices, is further consolidated with Case 15-CA-115945, which alleges that Respondent has engaged in further unfair labor practices within the meaning of the Act.

This Third Consolidated Complaint and Notice of Hearing, issued pursuant to Section 10(b) of the Act and Section 102.15 of the Board's Rules and Regulations, is based on these consolidated cases and alleges that Respondent has violated the Act as described below:

1. The charges in the above-cases were filed by the Union, as set forth in the following table, upon the Respondent on the dates indicated:

| Case | Amendment | Date Filed | Date Served |
|---|---|---|---|
| 26-CA-077268 | | 3/23/2012 | 3/23/2012 |
| 26-CA-077536 | | 3/28/2012 | 3/28/2012 |
| 15-CA-101311 | | 3/27/2013 | 3/29/2013 |
| 15-CA-101311 | Amended | 7/31/2013 | 7/31/2013 |
| 15-CA-103186 | | 4/18/2013 | 4/19/2013 |
| 15-CA-103186 | Amended | 4/30/2013 | 5/1/2013 |
| 15-CA-104063 | | 4/30/2013 | 5/1/2013 |
| 15-CA-104063 | Amended | 7/26/2013 | 7/29/2013 |
| 15-CA-106033 | | 5/29/2013 | 5/29/2013 |
| 15-CA-107597 | | 6/20/2013 | 6/20/2013 |
| 15-CA-108613 | | 7/8/2013 | 7/8/2013 |
| 15-CA-109746 | | 7/23/2013 | 7/24/2013 |
| 15-CA-109746 | Amended | 8/19/2013 | 8/19/2013 |
| 15-CA-109753 | | 7/23/2013 | 7/24/2013 |
| 15-CA-109755 | | 7/23/2013 | 7/24/2013 |
| 15-CA-115945 | | 10/30/2013 | 10/30/2013 |

2(a) At all material times, Respondent has been a limited liability company, with an office and place of business in Hope, Arkansas (Respondent's facility), and has been engaged in the operation of a commercial bakery.

2

(b)     In conducting its business operations annually, Respondent sold and shipped from its Hope, Arkansas facility, goods valued in excess of $50,000 directly to points outside the State of Arkansas.

(c)     Annually, Respondent, in conducting its business operations described above in paragraph 2(a), purchased and received at its Hope, Arkansas facility, goods valued in excess of $50,000 directly from points located outside the State of Arkansas.

3.     At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act.

4.     At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

5.     At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Louis Banda | - | Supervisor |
| Dan Banks | - | Director of Manufacturing |
| James R. Brown | - | Director of QA and Governmental Compliance |
| Linda Burke | - | Human Resources Manager |
| Ray Golsten | - | Supervisor |
| Rickey Ledbetter | - | Executive Vice-President, General Manager |
| Kenny White | - | Supervisor |

6.     About September 2012, a more exact date currently unknown to Counsel for the

3

General Counsel, Respondent, by Supervisor White, at Respondent's facility:

    (a)    Interrogated employees concerning their union activities.

    (b)    Threatened employees with discharge because of their union activity.

7.    About November 12, 2012, Respondent, in the lunch room at Respondent's facility, by installing video cameras, created an impression among its employees that their union activities were under surveillance by Respondent.

8.    About January 17, 2013, Respondent, by Rickey Ledbetter, at Respondent's facility:

    (a)    Threatened its employees with plant closure because of the Union.

    (b)    Made statements reasonable intended to coerce the employee or interfere with Section 7 rights by posting a memo that statements made by the Union were "simply false."

9.    About January 23, 2013, Respondent, by Rickey Ledbetter, during captive audience meetings at Respondent's facility:

    (a)    Threatened its employees with job loss because of their union activity.

    (b)    Threatened its employees on 17 occasions with plant closure because of their union activity.

    (c)    Threatened employees by telling them on three separate occasions that they were paid less because they retained the Union as their representative.

    (d)    Threatened employees by telling them that their continued support for the Union was the reason they were not receiving raises.

    (e)    By implying the Union could not do anything for employees, informed its employees (five times) that it would be futile for them to select the Union as their bargaining representative.

4

(f) Interrogated and engaged in surveillance of its employees' union activity by instructing employees to report it if other employees talked to them about the Union.

(g) Threatened its employees with unspecified reprisals to discourage their union activity.

(h) Orally promulgated and since then has maintained the following rule:

> "If you are harassed or threatened on any basis during this election campaign, ... we want to know about it immediately, so we can address the problem, .... We will not tolerate the abuse of any employee rights in this work place. But to remedy the problems and prevent recurrence, you must bring it to our attention."

(i) Respondent promulgated the rule described above in paragraph 9(h) to discourage its employees from assisting the Union or engaging in other concerted activities.

10(a) About late January or early February 2013, a more exact date currently unknown to Counsel for the General Counsel, Respondent, by Supervisor White, at Respondent's facility, interrogated employees concerning their union activities.

(b) About late January or early February 2013, a more exact date currently unknown to Counsel for the General Counsel, Respondent, by Supervisor White, at Respondent's facility, threatened employees with plant closure because of their union activity.

11. About February 1, 2013, Respondent, by Rickey Ledbetter, during captive audience meetings at Respondent's facility:

(a) Threatened its employees with job loss because of their union activity.

(b) Threatened its employees on 17 times with plant closure because of their union activity.

(c) Threatened employees by telling them on three separate occasions that they were paid less because they retained the Union as their representative.

(d) Threatened employees by telling them that their continued support for the Union was the reason they were not receiving raises.

5

(e) By implying the Union could not do anything for employees, informed its employees five times that it would be futile for them to select the Union as their bargaining representative.

(f) Interrogated and engaged in surveillance of its employees' union activity by instructing employees to report if other employees talked to them about the Union.

(g) Threatened its employees with unspecified reprisals to discourage their union activity.

(h) Orally promulgated and since then has maintained the following rule: "If you are harassed or threatened on any basis during this election campaign, … we want to know about it immediately, so we can address the problem, …. We will not tolerate the abuse of any employee rights in this work place. But to remedy the problems and prevent recurrence, you must bring it to our attention."

(i) Respondent promulgated the rule described above in paragraph 11(h) to discourage its employees from assisting the Union or engaging in other concerted activities.

12. About February 4, 2013, Respondent, by Linda Burke, during captive audience meetings at Respondent's facility, interrogated employees concerning their union activities.

13. About March 2013, a more exact date currently unknown to Counsel for the General Counsel, Respondent, by Dan Banks, at Respondent's facility:

(a) Promised its employees better wages and benefits if they got rid of the Union.

(b) Threatened its employees with plant closure because of the Union.

14. About January 22, 2013, Respondent suspended its employee Earnest Beasley.

15. About January 2013, a more exact date currently unknown to the General Counsel, Respondent refused to grant time off to its employee Christopher Contreras.

16. About February 4, 2013, Respondent placed its employees Vicki Loudermilk, Sandra Phillips and Lorraine Marks under investigation.

17.     About February 20, 2013, Respondent discharged its employee Earnest Beasley.

18.     About April 2013, a more exact date currently unknown to the General Counsel, Respondent refused to grant time off to its employee Christopher Contreras.

19.     About April 15, 2013, Respondent discharged its employee Christopher Contreras.

20.     About May 24, 2013, Respondent suspended its employee Lorraine Marks.

21.     About March 27, 2013, Respondent disciplined its employee Sandra Phillips.

22.     Respondent engaged in the conduct described above in paragraphs 14 through 21 because the named employees of Respondent assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

23(a)   The following employees of Respondent (the Unit) constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

> Included:  All full-time and regular part-time production and sanitation employees employed by Respondent at its Hope, Arkansas facility.
>
> Excluded:  All other employees, including temporary and seasonal employees as defined in the collective bargaining agreement, office clerical employees, professional employees, guards, and supervisors as defined in the Act.

(b)     On September 15, 2009, the Board certified the Union as the exclusive collective-bargaining representative of the Unit.

(c)     At all times since September 15, 2009, based on Section 9(a) of the Act, the Union has been the exclusive collective-bargaining representative of the Unit.

24(a)   About November 2012, a more specific date currently unknown to the General Counsel, Respondent installed video cameras in employee lunch rooms.

7

(b) About November 2012, a more specific date currently unknown to the General Counsel, the Union requested that Respondent bargain collectively about video cameras in the employee lunch rooms.

(c) Since about November 2012, a more specific date currently unknown to the General Counsel, Respondent has failed and refused to bargain collectively about the subject set forth above in paragraph 24(a) and (b).

25(a) About March 8, 2012, Respondent changed its past practice regarding Union access to Respondent's facility.

(b) About March 20, 2012, Respondent changed the location where the Union historically met with bargaining-unit employees to discuss grievances, Union business and other work-related matters.

(c) About March 23, 2012, Respondent changed its past practice of providing Union representatives access to Respondent's facility.

26. Since about January 7, 2013, Respondent:

(a) Changed the space used by the Union for meeting with bargaining-unit employees.

(b) Blocked the windows between the small and large employee lunchrooms.

(c) Limited the reasons and occasions when the Union would be allowed access to Respondent's facility.

(d) Prohibited solicitation by the Union.

(e) Stopped the Union's use of the large lunchroom to meet with employees.

(f) Informed the Union if it is observed engaging in activities outside of restrictions imposed by Respondent, the Union would not be allowed future access to Respondent's facility.

8

27. Since about January 8, 2013, Respondent:

(a) Imposed new conditions on the Union before granting the Union access to Respondent's facility.

(b) Imposed a notifications requirement on the Union before granting the Union access to Respondent's facility.

(c) Prohibited the Union from promoting or talking with employees about the upcoming NLRB election if the Union wanted access to Respondent's facility.

28. About January 10, 2013, Respondent:

(a) Conditioned the Union's subsequent visits to the Respondent's facility on the Union not promoting or talking with employees about the upcoming NLRB election.

(b) Imposed a notifications requirement on the Union before granting the Union access to Respondent's facility.

29. About January 16, 2013, Respondent:

(a) Conditioned the Union's subsequent visits to Respondent's facility on the Union not promoting or talking with employees about the upcoming NLRB election.

(b) Imposed a notifications requirement on the Union before granting the Union access to Respondent's facility.

(c) Threatened to no longer allow the Union access to Respondent's facility for plant visitations.

30. About January 21, 2013, the Respondent:

(a) Began to require the Union to state the reason and justification for its visits.

(b) Threatened to no longer allow union visitations to Respondent's facility.

9

    (c)    Threatened to arrest union officials for trespassing.

31.    About February 7, 2013, Respondent:

    (a)    Conditioned the Union's subsequent visits to the Respondent's facility on the Union not promoting or talking with employees about the upcoming NLRB election.

    (b)    Imposed a notifications requirement on the Union before granting the Union access to Respondent's facility.

32.    Since about February 8, 2013, Respondent has denied the Union access to Respondent's facility for plant visitations with bargaining unit employees.

33.    About April 17, 2013, Respondent denied the Union access to Respondent's facility for plant visitations with bargaining-unit employees.

34.    About July 3, 2013, Respondent ceased union dues-check off and stopped remitting dues to the Union.

35.    About July 23, 2013, Respondent refused to allow the Union access to its facility.

36.    About September 14, 2013, Respondent gave a wage increase to bargaining unit employees.

37(a)    The subjects set forth above in paragraphs 24 through 36 relate to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

    (b)    Respondent engaged in the conduct described above in paragraphs 24 through 36 without prior notice to the Union and without affording the Union an opportunity to bargain with Respondent with respect to this conduct and the effects of this conduct.

38.    Since about July 3, 2013, Respondent withdrew its recognition of the Union as the

exclusive collective-bargaining representative of the Unit.

39. By the conduct described above in paragraphs 6 through 13, Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

40. By the conduct described above in paragraphs 14 through 22, Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act

41. By the conduct described above in paragraphs 24 through 38, Respondent has been failing and refusing to bargain collectively and in good faith with the exclusive collective-bargaining representative of its employees in violation of Section 8(a)(1) and (5) of the Act.

42. The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

## REMEDY

As part of the remedy for the unfair labor practices alleged above, the General Counsel seeks an Order requiring that the Notice be read to employees during working time by Ricky Ledbetter.

As part of the remedy for the unfair labor practices alleged above in paragraphs 14, 19, and 20, the General Counsel seeks an order requiring reimbursement of amounts equal to the difference in taxes owed upon receipt of a lump-sum payment and taxes that would have been owed had there been no discrimination.

The General Counsel further seeks, as part of the remedy for the allegations in paragraphs 14, 19, and 20, that Respondent be required to submit the appropriate documentation to the

11

Social Security Administration so that when backpay is paid, it will be allocated to the appropriate periods.

Finally, the General Counsel further seeks all other relief as may be just and proper to remedy the unfair labor practices alleged.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations; it must file an answer to the second consolidated complaint. The answer must be **received by this office on or before January 24, 2014, or postmarked on or before January 23, 2014**. Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **File Case Documents,** enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a

12

complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the second consolidated complaint are true.

## NOTICE OF HEARING

PLEASE TAKE NOTICE THAT on **February 4, 2014, at 10:00 a.m. (CST), at Small Courtroom, Hempstead County Courthouse, 400 South Washington, Hope, Arkansas,** and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board. At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this second consolidated complaint. The procedures to be followed at the hearing are described in the attached Form NLRB-4668. The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

Dated: January 10, 2014

                              */s/ M. Kathleen McKinney*
                              M. KATHLEEN McKINNEY
                              REGIONAL DIRECTOR
                              NATIONAL LABOR RELATIONS BOARD
                              REGION 15
                              600 SOUTH MAESTRI PLACE, 7TH FLOOR
                              NEW ORLEANS, LOUISIANA 70130-3408

Attachments

## IMPORTANT NOTICE

The date, which has been set for hearing in this matter, should be checked immediately. If there is proper cause for not proceeding with the hearing on that date, <u>a motion to change the date of hearing should be made within fourteen (14) days from the service of the complaint</u>. Thereafter, it may be assumed that the scheduled hearing date has been agreed upon and that all parties will be prepared to proceed to the hearing on that date. Later motions to reschedule the hearing generally may not be granted in the absence of a proper showing of unanticipated and uncontrollable intervening circumstances.

All parties are encouraged to fully explore the possibilities of settlement. Early settlement agreements prior to extensive and costly trial preparation may result in substantial savings of time, money and personnel resources for all parties. The Board agent assigned to this case will be happy to discuss settlement at any mutually convenient time.

*M. Kathl M.L*
M. Kathleen McKinney
Regional Director

FORM NLRB-4338
(2-90)

## UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD
# NOTICE

Cases  26-CA-077268
26-CA-077536
15-CA-101311
15-CA-103186
15-CA-104063
15-CA-106033
15-CA-107597
15-CA-108613
15-CA-109746
15-CA-109753
15-CA-109755
15-CA-115945

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties. On the contrary, it is the policy of this office to encourage voluntary adjustments. The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing. However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated. Postponements *will not be granted* unless good and sufficient grounds are shown *and* the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds must be set forth in *detail*;

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5) Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

RICKEY GLENN LEDBETTER
EXECUTIVE VICE-PRESIDENT, GENERAL MANAGER
SOUTHERN BAKERIES LLC
2700 E 3RD ST
HOPE, AR 71801-6237

DAVID L. SWIDER, ATTORNEY
BOSE MCKINNEY & EVANS LLP
111 MONUMENT CIR STE 2700
INDIANAPOLIS, IN 46204-5120

SANDRA PERRY, ESQ.
BOSE MCKINNEY & EVANS LLP
111 MONUMENT CIR STE 2700
INDIANAPOLIS, IN 46204-5120

RICHARD LEWIS, FINANCIAL SECRETARY-TREASURER
BAKERY, CONFECTIONERY, TOBACCO AND GRAIN
MILLERS UNION, LOCAL 111
1720 OCALLA AVE
DALLAS, TX 75218-4239

Form NLRB-4668
(4-05)

# SUMMARY OF STANDARD PROCEDURES IN FORMAL HEARINGS HELD BEFORE THE NATIONAL LABOR RELATIONS BOARD IN UNFAIR LABOR PRACTICE PROCEEDINGS PURSUANT TO SECTION 10 OF THE NATIONAL LABOR RELATIONS ACT

The hearing will be conducted by an administrative law judge of the National Labor Relations Board who will preside at the hearing as an independent, impartial finder of the facts and applicable law whose decision in due time will be served on the parties. The offices of the administrative law judges are located in Washington, DC; San Francisco, California; New York, N.Y.; and Atlanta, Georgia.

At the date, hour, and place for which the hearing is set, the administrative law judge, upon the joint request of the parties, will conduct a "prehearing" conference, prior to or shortly after the opening of the hearing, to ensure that the issues are sharp and clearcut; or the administrative law judge may independently conduct such a conference. The administrative law judge will preside at such conference, but may, if the occasion arises, permit the parties to engage in private discussions. The conference will not necessarily be recorded, but it may well be that the labors of the conference will be evinced in the ultimate record, for example, in the form of statements of position, stipulations, and concessions. Except under unusual circumstances, the administrative law judge conducting the prehearing conference will be the one who will conduct the hearing; and it is expected that the formal hearing will commence or be resumed immediately upon completion of the prehearing conference. No prejudice will result to any party unwilling to participate in or make stipulations or concessions during any prehearing conference.

*(This is not to be construed as preventing the parties from meeting earlier for similar purposes. To the contrary, the parties are encouraged to meet prior to the time set for hearing in an effort to narrow the issues.)*

Parties may be represented by an attorney or other representative and present evidence relevant to the issues. All parties appearing before this hearing who have or whose witnesses have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603, and who in order to participate in this hearing need appropriate auxiliary aids, as defined in 29 C.F.R. 100.603, should notify the Regional Director as soon as possible and request the necessary assistance.

An official reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation. Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the administrative law judge for approval.

All matter that is spoken in the hearing room while the hearing is in session will be recorded by the official reporter unless the administrative law judge specifically directs off-the-record discussion. In the event that any party wishes to make off-the-record statements, a request to go off the record should be directed to the administrative law judge and not to the official reporter.

Statements of reasons in support of motions and objections should be specific and concise. The administrative law judge will allow an automatic exception to all adverse rulings and, upon appropriate order, an objection and exception will be permitted to stand to an entire line of questioning.

All exhibits offered in evidence shall be in duplicate. Copies of exhibits should be supplied to the administrative law judge and other parties at the time the exhibits are offered in evidence. If a copy of any exhibit is not available at the time the original is received, it will be the responsibility of the party offering such exhibit to submit the copy to the administrative law judge before the close of hearing. In the event such copy is not submitted, and the filing has not been waived by the administrative law judge, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

(OVER)

Form NLRB-4668
(4-05) Continued

Any party shall be entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing. In the absence of a request, the administrative law judge may ask for oral argument if, at the close of the hearing, it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

In the discretion of the administrative law judge, any party may, on request made before the close of the hearing, file a brief or proposed findings and conclusions, or both, with the administrative law judge who will fix the time for such filing. Any such filing submitted shall be double-spaced on 8 1/2 by 11 inch paper.

Attention of the parties is called to the following requirements laid down in Section 102.42 of the Board's Rules and Regulations, with respect to the procedure to be followed before the proceeding is transferred to the Board: No request for an extension of time within which to submit briefs or proposed findings to the administrative law judge will be considered unless received by the Chief Administrative Law Judge in Washington, DC (or, in cases under the branch offices in San Francisco, California; New York, New York; and Atlanta, Georgia, the Associate Chief Administrative Law Judge) at least 3 days prior to the expiration of time fixed for the submission of such documents. Notice of request for such extension of time must be served simultaneously on all other parties, and proof of such service furnished to the Chief Administrative Law Judge or the Associate Chief Administrative Law Judge, as the case may be. A quicker response is assured if the moving party secures the positions of the other parties and includes such in the request. All briefs or proposed findings filed with the administrative law judge must be submitted in triplicate, and may be printed or otherwise legibly duplicated with service on the other parties.

In due course the administrative law judge will prepare and file with the Board a decision in this proceeding, and will cause a copy thereof to be served on each of the parties. Upon filing of this decision, the Board will enter an order transferring this case to itself, and will serve copies of that order, setting forth the date of such transfer, on all parties. At that point, the administrative law judge's official connection with the case will cease.

The procedure to be followed before the Board from that point forward, with respect to the filing of exceptions to the administrative law judge's decision, the submission of supporting briefs, requests for oral argument before the Board, and related matters, is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections. A summary of the more pertinent of these provisions will be served on the parties together with the order transferring the case to the Board.

Adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations. If adjustment appears possible, the administrative law judge may suggest discussions between the parties or, on request, will afford reasonable opportunity during the hearing for such discussions.

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 15

SOUTHERN BAKERIES, LLC

and

BAKERY, CONFECTIONERY, TOBACCO
AND GRAIN MILLERS UNION, LOCAL 111

Cases 26-CA-077268
26-CA-077536
15-CA-101311
15-CA-103186
15-CA-104063
15-CA-106033
15-CA-107597
15-CA-108613
15-CA-109746
15-CA-109753
15-CA-109755
15-CA-115945

**AFFIDAVIT OF SERVICE OF:** Copy of Third Order Consolidating Cases, Third Consolidated Complaint and Notice of Hearing with forms NLRB-4338, Important Notice and NLRB-4668 attached, dated January 10, 2014.

I, the undersigned employee of the National Labor Relations Board, being duly sworn, say that on January 10, 2014, I served the above-entitled document(s) by **certified or regular mail**, as noted below, upon the following persons, addressed to them at the following addresses:

RICKEY GLENN LEDBETTER
EXECUTIVE VICE-PRESIDENT, GENERAL MANAGER
SOUTHERN BAKERIES LLC
2700 E 3RD ST
HOPE, AR 71801-6237

**CERTIFIED MAIL/RRR**

DAVID L. SWIDER, ATTORNEY
BOSE MCKINNEY & EVANS LLP
111 MONUMENT CIR STE 2700
INDIANAPOLIS, IN 46204-5120

**REGULAR MAIL**

SANDRA PERRY, ESQ.
BOSE MCKINNEY & EVANS LLP
111 MONUMENT CIR STE 2700
INDIANAPOLIS, IN 46204-5120

**REGULAR MAIL**

RICHARD LEWIS, FINANCIAL SECRETARY-TREASURER
BAKERY, CONFECTIONERY, TOBACCO AND GRAIN
MILLERS UNION, LOCAL 111
1720 OCALLA AVE
DALLAS, TX 75218-4239

**CERTIFIED MAIL**

HON. WILLIAM N. CATES
ASSOCIATE CHIEF JUDGE
NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES
401 WEST PEACHTREE ST., NW., SUITE 1708
ATLANTA, GA 30308

**NXGEN**

VERBATIM REPORTING & TRANSCRIPTION, LLC
KIMBERLY MCCRIGHT
520-303-7356

**WEBSITE**

| January 10, 2014 | Donna Simmons Designated Agent of NLRB |
|---|---|
| Date | Name |
| | /s/ |
| | Signature |